No. 33,879

SELMA CLARK, *Appellant,* v. THE SOUTHWESTERN GREYHOUND LINES
and THE CARDINAL STAGE LINES COMPANY et al., *Appellees.*

(79 P. 2d 906)

Opinion
filed June 11, 1938.

*J. R. Hyland, H. N. Hyland,* both of Washington, *Will A. Kelly* and *William
M. Kelly,* both of Chicago, Ill., for the appellant.

C. H. Brooks, Howard T. Fleeson, Fred W. Aley, Carl G. Tebbe, Wayne Coulson, Paul R. Kitch, all of Wichita, T. M. Lillard, O. B. Eidson, Philip H. Lewis, all of Topeka, and Farel R. Lobaugh, of Washington, for the appellees.

The opinion of the court was delivered by

THIELE, J.: Plaintiff appeals from an order sustaining a demurrer to her evidence and from a judgment in favor of the demurring defendants.

Plaintiff's amended petition alleged that she purchased a ticket from the Southwestern Greyhound Lines, Inc., at McPherson, Kan., for Chicago; that she was transported to Salina, where she was placed on an eastbound bus operated by defendant Cardinal Stage Lines Company; that the bus was going eastward between Rossville and Silver Lake when it was approached by a truck going westward operated by defendants Bradley and Gardner. The above matters were admitted by the pleadings, as was the fact there was an accident in which plaintiff received injuries. It was alleged that the bus and the truck were so carelessly and negligently operated while attempting to pass each other that they collided; that the bus was driven along and upon the center of the highway so as to project the bus off its part of the highway and over upon the side on which the truck was being operated, and that the truck was driven along and upon the center of the highway so as to project the truck over and upon the side of the highway on which the bus was being driven. It was also alleged that each vehicle was being driven at an excessive, improper and unlawful speed, and that the driver of each failed to give suitable warnings of their improper positions on the highway by use of lights and horn signals, and each, seeing the improper position of the other on the highway, failed to stop immediately upon the appearance of the impending collision; that the drivers of both vehicles were operating their respective vehicles while in a drowsy condition and suffering from loss of sleep, in violation of certain rules and regulations of the corporation commission of the state limiting hours of continuous service by a driver. It was further alleged that as a result of the collision some object penetrated the side of the bus from the outside, inflicting injuries which need not be detailed here. The answers of the various defendants each denied responsibility for the accident. At the trial the defendants operating buses demurred to plaintiff's evidence on the ground no cause of action had been proved against them, which demurrers were sustained, and judgment rendered for the demurring defendants. The

trial proceeded and plaintiff recovered as against the operators of the truck. Plaintiff now appeals from the ruling on the demurrers and from the judgments in favor of the demurring defendants.

The test for determining the sufficiency of evidence as against a demurrer was considered in *Robinson v. Short*, decided this day (see *ante,* p. 134, 79 P. 2d 903), wherein it was said:

"In testing the sufficiency of evidence as against a demurrer, it has been repeatedly held that the court shall consider all of the plaintiff's evidence as true, shall consider that favorable to the plaintiff and disregard that unfavorable, shall make all inferences favorable to the plaintiff, and shall not weigh any part that is contradictory, nor weigh any differences between his direct and cross-examination, and if, so considered, there is any evidence which sustains the plaintiff's case, the demurrer should be overruled." (p. 134.)

In reviewing the testimony we shall omit reference to plaintiff's injuries and to all matters not bearing on the question of negligence.

The plaintiff stated she did not see the vehicle which struck the bus and had no warning that it was going to strike. After the accident she was taken from the bus and placed in an automobile standing on the shoulder of the road. R. W. Spiker was a passenger on the bus. He stated that shortly before the accident the driver was blowing the horn and he felt the bus pull over on the shoulder; he had not been watching the road or paying attention to the actions of the driver. He saw the truck when it was about 75 to 100 feet away and it seemed to be coming somewhat diagonally across the road; when he first saw it, it was straddling the center of the road and it kept coming in the same position. He felt the bus pull over on the shoulder of the road. He thought the shoulder was five or six feet in width. After the bus stopped the entire right side of the bus was off the pavement, probably half was upon the shoulder, the left wheels were on the slab; the position of the bus at the time of the impact was pretty close to that position. After the accident he helped to remove plaintiff and to place her in an automobile drawn up alongside the south side of the bus. He stated further the automobile was in the ditch and was driven out of it after Mrs. Clark was moved. He stated the bus was traveling between forty and forty-five miles an hour, and at time of the impact had slowed down considerably and stopped within a distance of twenty to twenty-five feet. J. I. Gustafson was not a passenger on the bus. He testified he was familiar with the road; that in 1937 it was in the same condition as in 1934 when the accident occurred, and that in November, 1937, he measured the shoulder of the road at varying places east of

Rossville and that it was eight or nine feet wide, and that the pavement was 18 feet wide. The record as abstracted does not disclose that witness knew the exact place of the accident.

Otto Bradley, driver of the truck, was a witness and testified that after the accident the left front wheel of the bus was on the left or north side of the center line of the highway. As abstracted, there is no showing he stated its position prior to the accident, or that he gave any evidence as to how the accident occurred.

Mrs. Clarence Richter testified she was a passenger on the bus and when she first noticed the approaching truck she couldn't see it long enough to see whether it was on its right side. She noticed the black line dividing the middle of the road. She watched the truck until the collision. The truck seemed to swerve toward the bus. It did not weave back and forth. She judged the speed of the bus to be between forty-five and fifty miles per hour and that the truck seemed to be coming at the same speed. The bus driver swerved out off the highway (pavement) when he saw the approaching truck and then swerved again a little to the left; that if he had not swerved left after swerving right, he would have gone in the ditch. The bus was off the slab for some space before the collision. When the bus stopped, the right wheels were off the pavement. She did not know whether it was off the pavement or not when the collision occurred. The bus was hit in the side at the third seat. She also testified to hearing a conversation between the truck driver and the bus driver in which the truck driver said all he could remember was that he was tired and sleepy and couldn't recall seeing any lights, never saw the bus lights, and the only thing he remembered was that it must have been the impact which roused him and as soon as he could he stopped his truck. At a later time she said she didn't remember hearing any horn, never noticed it; that it was just a little space of time after she saw the approaching truck that the bus driver applied his brakes and slowed up the bus.

"In my judgment he slowed up just as rapidly as he could. . . . We were going . . . . at a fast rate of speed and he couldn't slow down very quickly until 'we were together—he couldn't slow up much. . . . He did not put on his brakes or apparently apply them before I saw the approaching truck. . . . The first observation that I made was that there was a truck bearing down on me, plus the feeling that I had of the bus being slowed down and the grinding of the wheels on the gravel and then I realized we were off the slab."

Appellant directs our attention to the fact that the defendant bus

companies were common carriers of persons, and as such, required to use the greatest skill, care and foresight to which they are in their nature susceptible to avoid injuries, citing in support *Topeka City Rly. Co. v. Higgs,* 38 Kan. 375, syl. ¶¶ 1, 2, 16 Pac. 667. And see *Cross v. Chicago, R. I. & P. Rly. Co.,* 120 Kan. 58, 242 Pac. 469, for a brief discussion of the same rule. Based on the requirement of care thus laid down, it is insisted that giving to plaintiff the benefit of all testimony favorable to her, with all reasonable inferences to be drawn therefrom, the evidence was sufficient to make a case for the jury.

It is first insisted that the evidence shows the bus was being operated at a speed from 45 to 50 miles per hour; that under G. S. 1935, 68-152h, then in force, such motor vehicles could not be operated lawfully at a speed in excess of forty-five miles per hour; that the speed was unreasonable, unlawful and constituted negligence. The mere violation of a statute regulating speed is not in itself sufficient to make the operator of a motor vehicle guilty of actionable negligence in a collision of automobiles; to make him liable it must appear that the speed contributed to the collision and was the proximate cause of the injuries sustained. (*Barshfield v. Vucklich,* 108 Kan. 761, 197 Pac. 205; *Cross v. Rosencranz,* 108 Kan. 350, 195 Pac. 857; *Phillips v. Meyer Sanitary Milk Co.,* 129 Kan. 45, 281 Pac. 895.) It is true the evidence shows a speed slightly beyond the statutory limit, and it may be deducible therefrom that had the bus been going at a lower speed it would not have been at the point where the accident happened, but beyond that it does not appear how speed entered into the matter. Many circumstances other than speed would have to be considered in determining just what caused the bus to be at the particular point at the particular time. Had it not been on the road at all there would have been no accident; had it started earlier and proceeded slower it might have reached the same point at the same time; had the truck traveled for any considerable distance, as the evidence showed it was here proceeding, the accident might have happened either to the defendant's bus or any other vehicle traveling eastward on the highway at any place within a good many rods of where it did happen. There is no evidence which warrants any conclusion that the speed of the bus was the proximate cause of the accident.

Appellant next directs our attention to the rule that a driver is not entitled to insist on his right to a full half of the roadway re-

gardless of consequences (42 C. J. 942), and argues that the bus driver was negligent in not turning right, off the pavement and on to the shoulder, sooner, and farther than the evidence shows he did. Appellees direct our attention to the fact that no such ground of negligence was alleged in the petition, the grounds therein alleged, as above stated, being that the bus was driven on the wrong side of the center of the road, at an excessive speed and without giving proper warnings. The matter of speed has been mentioned; there is no evidence proper warning signals were not given, and if it be assumed that plaintiff had sought to amend to conform to the proof, if any, that the bus driver should have turned to the right sooner or proceeded farther, there still remains a question whether there was such proof. So far as the record shows, the fact the truck was approaching and coming so that its left wheels were to its left of the center of the road was not discoverable until the truck was possibly one hundred feet from the bus. There is no doubt under the evidence that at that time the bus was on its proper side of the highway. A similar situation was presented in *Crowe v. Moore,* 144 Kan. 794, 799, 62 P. 2d 846, wherein it was said:

"The casualty did not occur as the result of excessive speed—there is no evidence of that. It occurred at a place where the plaintiff's car at the time and under the circumstances had no right to be. (*Giles v. Ternes,* 93 Kan. 140, 145, 143 Pac. 491; *Lindenstruth v. Levenque,* 138 Kan. 93, 95, 23 P. 2d 486; *Hiler v. Cameron,* 144 Kan. 296, 299, 59 P. 2d 30.) It is also apparent that the driver of either car should have seen the other car. The defendant on the proper side of the highway had the right to presume that the plaintiff's car approaching from the opposite direction on the left-hand or wrong side of the highway would get over on his proper side in time to avoid a collision (*McComas v. Clements,* 137 Kan. 681, 21 P. 2d 895), and under such circumstances the defendant did not have to anticipate that plaintiffs would not do so. (*Anderson v. Thompson,* 137 Kan. 754, 22 P. 2d 438.)" (p. 799.)

As soon as the bus driver saw the situation he drove to his right, partly off the slab and onto the shoulder, and only veered his car to the left again to avoid driving into the ditch alongside the highway. It cannot be argued that because he did not go to the right until his right wheels were on the very edge of the shoulder and almost to the ditch, he was negligent. Whether it would be possible for the bus driver to know if the lights of the approaching vehicle were upon a truck or a small automobile is not made to appear, but it does appear that he was operating a bus conveying passengers other than the injured plaintiff and he had some duties to perform in the handling of his bus so that it would not be precipitated into the ditch.

Appellant argues that the action of the bus driver, proceeding on a narrow road, at an excessive speed, and not slackening speed, presented a situation where a jury should have been permitted to say whether he was guilty of negligence. The argument injects certain elements which the evidence excludes, for it is undisputed in plaintiff's evidence that the bus slowed up rapidly and stopped within a short distance, and that the road was not narrow; if anything, it was somewhat wider than the usual concrete paved highway, that is, considering pavement and width of shoulder.

The mere fact there was an accident did not convict the defendants of negligence. The burden of proving negligence was upon the plaintiff, and that her proof failed to do.

The rulings and judgment of the trial court are affirmed.